UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BECKY ANN PEDIGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:09-CV-93 |
| v. ) | |
| ) | Collier / Lee |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This action was brought by Plaintiff Becky Ann Pedigo pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff social security disability ("SSD") benefits. Plaintiff has filed a motion for judgment on the pleadings seeking the award of benefits [Doc. 13], and Defendant has filed a motion for summary judgment [Doc. 19]. For the reasons stated below, I **RECOMMEND**: (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 19] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED WITH PREJUDICE**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed for SSD benefits, alleging disability arising out of a herniated disc and nerve impingement since January 13, 2003 (Tr. 48, 85). Her claim was initially disapproved on March 13, 2005, based on the Commissioner's conclusion that "[a]lthough [she did] have back and nerve pain, the evidence show[ed she was] able to stand, move about, and use [her] arms, hands and legs in a satisfactory manner." (Tr. 45, 48). The agency's investigation revealed that Plaintiff also suffered from obesity and hypertension, but those impairments were deemed not disabling (Tr. 48). Plaintiff requested reconsideration of the initial decision and was again disapproved for SSD benefits on May 11, 2007 (Tr. 53). A hearing was held before an administrative law judge ("ALJ") on November 8, 2007 (Tr. 23-41), and an unfavorable decision was issued on May 9, 2008 (Tr. 7-22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 1).

## II. ELIGIBILITY FOR DISABILITY BENEFITS

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work: unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to

2

consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted). The claimant bears the burden of proof at steps one through four, but at step five, the burden shifts to the SSA to show there are jobs available to the claimant. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). If at any step in the sequential process the SSA definitively determines the claimant either is or is not disabled, the process ends. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

### III. FACTUAL BACKGROUND AND ALJ'S FINDINGS

#### A. Plaintiff's Complaints and Treatment History

According to the treatment notes in the record, Plaintiff, a high school graduate who was "approaching advanced age" when she applied for SSD benefits (Tr. 97, 127), first sought treatment for back pain in late 2002 (Tr. 195-96). Prior to her injury, Plaintiff was employed as a bookkeeper and cashier for a grocery store (Tr. 94). Plaintiff reported she initially injured her back getting clothes out of her dryer at home in November, 2002 (Tr. 153). She sought treatment at the emergency room and was referred to W. H. King, M.D. (Tr. 153), who treated her for "low back pain that radiates to her left hip." (Tr. 195). Plaintiff complained that her symptoms made it difficult for her to walk or stand (*id.*). Although she presented in "mild distress," Dr. King did not observe a visible muscle spasm or any evidence of abnormal spine curvature, and Plaintiff had full range of motion to her lumbar spine (Tr. 195-96). Dr. King ordered a bone density test, the results of which were "well within normal limits" (Tr. 196). Dr. King diagnosed Plaintiff with sciatica and a lumbrosacral strain and recommended she take the weekend off work (Tr. 196). Dr. King prescribed pain medicine, but in January, 2003, Plaintiff reported only "minimal relief" from the medication

3

and stated her pain was exacerbated by activity (Tr. 197). An MRI revealed her L 4-5 disc was impinging the left L 5 nerve root, and Dr. King fitted Plaintiff with a lumbar support orthosis, prescribed pain medication and muscle relaxers, and placed her on bed rest (*id.*). Two weeks later, Plaintiff reported "minimal improvement" while on bed rest and "moderate relief" from the muscle relaxers. Dr. King noted she "s[at] comfortably in the exam chair," and stated her herniated disc was "improving" (Tr. 197-98). He recommended "continued bed rest for another 2 days." (Tr. 198).

In February, 2003, Plaintiff stated her back was "not any better," and a physical examination revealed a limited range of motion to her lumbar spine, "particularly in extremes of motion." (Tr. 198). Despite her complaints of pain, Dr. King observed Plaintiff's "gait [was] non antalgic and toe and heel walk [were] performed without muscular difficulty." (Tr. 198). Dr. King recommended Plaintiff remain "non active" (Tr. 199). On March 4, 2003, Plaintiff continued to complain of radiating pain and asked for a referral to a pain management specialist (*id.*). Plaintiff received a referral to Thomas P. Miller, M.D. (*see* Tr. 152, 199-200). On March 12, 2003, Dr. Miller, performed "selective nerve root injections" on Plaintiff, and on March 25, 2003, Dr. King stated Plaintiff's herniated disc with radiculopathy was "improving" with aqua therapy and multiple medications. In June, 2003, Plaintiff reported "improved symptoms" to Dr. King and indicated she was "anxious to return to work." Dr. King noted his impression that Plaintiff's herniated disc was "resolving" and released her to light duty work, provided she not engage in lifting, pushing, or bending (Tr. 200). In September, 2003, Plaintiff told Dr. King she continued to have "intermittent" symptoms of back pain and did not feel she could perform a "full duty job" (Tr. 201). At that appointment, Dr. King noted Plaintiff sat comfortably in the exam chair and had a normal neurological exam, and he recommended she "continue with light duty work [with] no bending, no

4

stooping, and no lifting greater than 10 lbs." (*Id.*). In November, 2003, Plaintiff reported to Dr. King that she had continued to improve, and Dr. King recommended she "have activity as tolerated" and opined she could "continue her light duty work." (Tr. 202).

In February, 2004, in the last of the treatment notes by Dr. King, Plaintiff stated she was feeling "some better" after having been dismissed from work "because of her inability to return to full function." (*Id.*). Dr. King reported that Plaintiff was "anticipating finding another position that is not as strenuous and causes her symptoms to flare." (*Id.*). He gave Plaintiff a letter "that disable[d] her from her job so that she c[ould] collect her retirement benefits," but he did not otherwise opine as to her work status (*id.*). Dr. King diagnosed Plaintiff with chronic pain and recommended she continue with pain management (Tr. 202-03).

In Plaintiff's continuing treatment notes with Dr. Miller, Plaintiff frequently described her condition. She characterized her pain as "dull, aching, and tingling" (*e.g.*, Tr. 184). Prior to December, 2003, she sometimes reported she experienced these symptoms on a "constant" basis (Tr. 184, 186), but after that date, she reported only "intermittent" symptoms (*e.g.*, Tr. 159, 167, 171, 174, 182). In August, 2004, She described "slight pain" in her lower back and lower left extremity (Tr. 173). Plaintiff's subjective rating of her pain level improved during the course of her treatment. From April, 2003, to December, 2003, she rated her pain as 3/10 (Tr. 182, 184, 186, 188, 190, 192). Between February, 2004, and April, 2005, however, she rated her pain as 2/10 on most occasions, and as low as 1/10 in June, 2004 (Tr. 159, 163, 167, 171, 174, 176, 179). By April, 2005, Plaintiff reported that her participation in pain management had allowed her return to performing "general housework" (Tr. 160). She also reported she was able to shower and dress herself and she regularly did laundry, cooked, vacuumed, shopped, and handled childcare and personal finances for her

5

household (*e.g.*, Tr. 160, 180). She reported she could drive herself, sit in a car for two to three hours, and use a computer (*id.*). On the basis of Plaintiff's reports, Dr. Miller commented that Plaintiff's pain medications were "helping" (Tr. 188) and were "good" or "working well" (Tr. 166, 176, 184, 186, 190).

In her application for SSD benefits, Plaintiff stated her pain affects her "at least once a day," depending on her activities, and that she wakes up in pain "most days." (Tr. 123). When it affects her, the pain persists anywhere from "a couple of hours" to "all day" (*id.*). She reported her pain medications provides effective pain relief but makes her feel "sluggish," and her support orthosis helps "a little" (Tr. 123-24). In addition, walking and lying down help to relieve her pain, but she has difficulty standing or sitting in one place for long (Tr. 124).

### B. Consultative Examinations

Emelito Pinga, M.D., performed a consultative examination for the state agency in February, 2007 (Tr. 204-07). Dr. Pinga noted Plaintiff was hypertensive, and recommended Plaintiff seek care at an emergency room or an urgent care clinic to get blood pressure medication (Tr. 205). Dr. Pinga also observed Plaintiff was obese and recommended she implement a caloric-restricted diet (Tr. 205-06). Plaintiff did not have difficulty getting out of her chair or onto the examination table, and her gait was within normal limits (*id.*). Dr. Pinga opined Plaintiff could sit six hours or walk or stand four hours in an eight-hour workday, and would be limited to lifting only five to ten pounds frequently or 15 pounds occasionally. (Tr. 206). Dr. Pinga noted Plaintiff gave a "good effort" during the examination (Tr. 205). Olunwa C. Ikpeazu, M.D., reviewed Plaintiff's file and opined that Dr. Pinga's assessment was too restrictive (Tr. 215-16). Dr. Ikpeazu found Plaintiff's complaints only "partially credible" and opined she could lift 50 pounds occasionally and 25 pounds

6

frequently and had no postural limitations (Tr. 210-11, 216). Dr. Ikpeazu also observed there was no evidence of "end organ damage" associated with Plaintiff's hypertension (Tr. 216).

Thomas Mullady, M.D., also performed a consultative physical examination of Plaintiff on June 23, 2008 (Tr. 218-29). Since Dr. Pinga's examination, Plaintiff had lost 56 pounds and her blood pressure was substantially lower (Tr. 195, 205, 228). Dr. Mullady noted Plaintiff's gait was normal but she had decreased range of motion of her lumbar spine (*id.*). He opined that Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently, and could sit six hours and stand or walk two hours in an eight-hour workday (Tr. 229). Dr. Mullady further opined Plaintiff could sit for two hours uninterrupted and stand or walk for 30 minutes uninterrupted (Tr. 220). He also noted some postural limitations: Plaintiff could stoop, kneel, crouch, and crawl only "occasionally" (Tr. 222).

### C. Hearing Testimony

At the hearing, Plaintiff testified she would be able to stand or walk only about one hour out of an eight-hour workday, but she could sit for 30 to 45 minutes before needing to stand or otherwise change positions (Tr. 28). She also testified she could comfortably lift or carry only five to eight pounds (*id.*). Plaintiff stated she typically spends five to six hours per day in a recliner because elevating her legs provides pain relief (Tr. 29-30). She testified she could perform housework for about 20 minutes at a time before needing a break, but could not sweep or mop (Tr. 30).

Also at the hearing, a vocational expert ("VE") testified in response to a series of hypothetical questions based on an individual with Plaintiff's age, education, and past work experience (Tr. 34-39). Assuming Plaintiff's subjective complaints were true, the VE testified Plaintiff could not perform any full-time work (Tr. 36, 38-39). Based on the functional limitations

7

found by the ALJ, however, including the requirement of a sit/stand option, the VE testified that Plaintiff could perform several semi-skilled sedentary jobs as well as "about a fourth" of the unskilled sedentary occupational base (Tr. 13, 34-36).

### D. ALJ's Findings

After the hearing, the ALJ issued an opinion finding Plaintiff was not disabled. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (Tr. 12). At step two, the ALJ found Plaintiff had several severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, hypertension, and obesity (*id.*). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments severe enough to meet or medically equal a listed impairment (*id.*). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the additional limitation that she "may require a sit/stand option" (Tr. 13-19). Then, at step four, the ALJ determined that this RFC determination precluded Plaintiff from performing any of her past relevant work (Tr. 19). Finally, the ALJ relied on the VE's testimony to conclude that, given Plaintiff's RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, and Plaintiff was therefore not disabled (Tr. 19-22).

## IV. ANALYSIS

Relying on *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992), Plaintiff argues the ALJ improperly substituted his judgment for that of her treating physicians, Drs. King and Miller, and that the ALJ's RFC assessment was therefore not supported by substantial evidence [Doc. 14 at 5-9].

8

## A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009

WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Treating Physician Rule

The law governing the weight to be given to a treating physician's opinion is well settled. To reject such an opinion, the ALJ must find either that it is not well supported by medical evidence or that it is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). When the ALJ does reject a treating source's opinion, he "must provide 'good reasons' . . . , 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96-7p). Even if the ALJ determines, on the basis of such an analysis, that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355, at *11 (6th Cir. Aug. 27, 2009) (unpublished); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ may not substitute his opinion for that of a treating source, but must base his assessment of the treating source's opinion on the evidence in the record. *See Poe v. Comm'r of Soc.*

10

*Sec.*, No. 08-5912, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009) (unpublished) ("ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."). If the ALJ's assessment of a claimant's RFC is based on an improper rejection of a treating source's opinion, then the RFC determination is not based on substantial evidence and is subject to reversal. *E.g.*, *Simpson*, 2009 WL 2628355, at *13.

The rule of deference to a treating physician's opinion, however, is inapposite when the treating physician has not offered an opinion to which the ALJ can defer. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (where treating physician offered no unequivocal opinion concerning claimant's ability to work, ALJ's decision to discount diagnosis was not error). An opinion, and not just a diagnosis, is necessary to trigger the rule of deference to a treating physician because disability is determined by reference to the functional limitations imposed by a condition, not the condition itself. *Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (concluding that a diagnosis alone did not establish an ailment's severity). An "opinion" is defined as a "judgment[] about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis, and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." *Simpson*, 2009 WL 2628355, at *12 (quoting 20 C.F.R. § 404.1527(a)(2)). Where treatment records contain only the subjective complaint of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them. *See Poe*, 2009 WL 2514058, at *7 (where treating physician report was based on claimant's subjective complaints, it was not entitled to deference).

11

Here, the ALJ gave "full consideration" to the "observations by . . . treating and examining physicians" and concluded they did not support Plaintiff's claimed limitations (Tr. 13). The ALJ stated "[t]here is no treating source opinion that the claimant was disabled from the performance of full-time work." (Tr. 16). Based on a full review of the record, I **FIND** that neither Dr. King nor Dr. Miller offered any opinion inconsistent with the ALJ's RFC determination. In other words, the ALJ did not "reject" Plaintiff's treating physicians' opinions at all--either properly or improperly.

Plaintiff argues that Dr. King restricted Plaintiff from lifting, pulling, pushing, stooping, or bending, and that subsequent to these restrictions, the medical record "shows no improvement in [Plaintiff's] condition." [Doc. 14 at 2]. Plaintiff's argument mischaracterizes the treatment record. Although Dr. King did restrict Plaintiff's work status in June, 2003, to exclude lifting, pushing, pulling, and bending, he released her to return to "light duty" work at that same appointment (Tr. 200). In September, 2003, Dr. King offered a slightly less restrictive assessment: light duty work, with no bending, stooping, or lifting *greater than 10 pounds* (Tr. 201) (emphasis added). In November, 2003, Dr. King offered no opinion as to Plaintiff's work status (Tr. 202). Plaintiff argues that Dr. King's failure to state whether Plaintiff could continue performing "light duty" work in November, 2003, is tantamount to an opinion that she could not do so [Doc. 21 at 2]. Plaintiff points to no case, however, where a treating physician's silence was construed as an "opinion," and the Court is aware of none. Furthermore, if any inference as to Dr. King's opinion may be taken from his silence, it is that he concurred in Plaintiff's own assessment of her work abilities--namely, that although she could not perform her previous job, she believed she could perform other, less strenuous work (Tr. 202). Such an "opinion" would be entirely consistent with the ALJ's RFC determination. In addition, Plaintiff's contention that her treating physicians' notes show "no

12

improvement" is simply not true. As discussed above, Plaintiff's own subjective descriptions of her symptoms show an unmistakable trend of improvement throughout her treatment.

In sum, the ALJ did not discount the opinions of Plaintiff's treating physicians. Instead, he considered those opinions and, quite reasonably, found them consistent with an RFC of sedentary work including a sit/stand option (Tr. 16). The ALJ also considered the much more current opinions of the examining physicians, Drs. Pinga and Mullady, and found them consistent with the same RFC determination (Tr. 16-17). The only opinion evidence explicitly rejected by the ALJ was that of the non-examining physician who opined Plaintiff could perform medium work activity (Tr. 18). The ALJ rejected this opinion in favor of a *more* restrictive RFC (*id.*). Finally, the ALJ considered Plaintiff's daily activities (e.g., the ability to drive and perform household duties) and found them supportive of Plaintiff's ability to perform sedentary work (Tr. 18). Therefore, because the ALJ accurately characterized and adopted Plaintiff's physicians' opinions, I **CONCLUDE** the ALJ did not "substitute his judgment" for that of her treating physicians. Furthermore, I **CONCLUDE** the evidence of record, including treating and examining physician opinions and Plaintiff's daily activities, constitute substantial evidence of the RFC determination.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I **RECOMMEND:**[1]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.

(2) Defendant's motion for summary judgment [Doc. 19] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).