UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BECKY PEDIGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:09-CV-93 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Chief Judge Curtis L. Collier |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM

Plaintiff Becky Ann Pedigo ("Plaintiff") brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a decision by Defendant, the Commissioner of Social Security ("Defendant"), denying Plaintiff social security disability benefits. Plaintiff moved for judgment on the pleadings (Court File No. 13), and Defendant moved for summary judgment (Court File No. 19). Magistrate Judge Susan K. Lee filed a report & recommendation ("R&R"), pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), recommending the Court rule in favor of Defendant (Court File No. 22). Plaintiff filed objections (Court File No. 23). Defendant filed a notice of no objections (Court File No. 24).

Having reviewed the R&R, the parties' briefs, the applicable law, and the record, the Court will **ACCEPT** and **ADOPT** the magistrate judge's findings of fact, conclusions of law, and recommendations (Court File No. 22); **DENY** Plaintiff's motion (Court File No. 13), **GRANT** Defendant's motion (Court File No. 19); **AFFIRM** the decision of the Commissioner of Social Security; and **DISMISS** the case.

## I. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, *4 (6th Cir. Feb. 2, 1999) (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)); *see also Rogers*, 486 F.3d at 248 n.5.

## II. FACTS AND PROCEDURAL HISTORY

Because Plaintiff does not allege any facts omitted from the R&R's exhaustive account of Plaintiff's medical history, the Court will not repeat this detailed account, though it has been

reviewed extensively. Because Plaintiff's objections focus solely on the evidence provided from her treating physicians, the summary repeated here will focus on that evidence.

### A. Administrative Proceedings

Plaintiff began suffering from severe back pain in late 2002. She filed a claim for social security disability ("SSD") benefits caused by a herniated disc and nerve impingement, alleging she was eligible for SSD benefits since January 13, 2003 (Tr. 48, 85). Her claim was investigated and it was determined Plaintiff suffers back and nerve pain, which is complicated by obesity and hypertension (Tr. 48). However, Defendant denied her claim on March 13, 2005, concluding that despite her symptoms, "the evidence show[ed she was] able to stand, move about, and use [her] arms, hands and legs in a satisfactory manner." (Tr. 45, 48). Plaintiff requested reconsideration and was again denied on May 11, 2007 (Tr. 53). A hearing was held before an administrative law judge ("ALJ") on November 8, 2007 (Tr. 23-41) and her claim was again denied on May 9, 2008 (Tr. 7-22). The ALJ's decision became the final decision of Defendant when the Appeals Council denied Plaintiff's request for re-review (Tr. 1).

Plaintiff filed suit in this Court. After cross-motions for summary judgment were filed, the magistrate judge issued an R&R recommending the Court rule against Plaintiff in favor of Defendant (Court File No. 22). Plaintiff timely filed an objection (Court File No. 23). Defendant did not object (Court File No. 24) or respond to Plaintiff's objection.

### B. Medical and Occupational Evidence

Prior to her injury, Plaintiff, a high school graduate, was a bookkeeper and cashier at a grocery store (Tr. 94). Plaintiff initially injured her back while doing laundry in her home in late 2002 (Tr. 195-96). She went to the emergency room and was referred to Dr. W.H. King, M.D. (Tr.

153), who treated her for "low back pain that radiates to her left hip." (Tr. 195). Plaintiff stated the pain made it difficult to walk or stand (*id.*). Dr. King observed that though Plaintiff seemed to be in "mild distress," Plaintiff lacked visible muscle spasms or any evidence of abnormal spine curvature and Plaintiff had a normal range of motion in her lumbar spine (Tr. 195-96). After testing, Plaintiff was found to have a bone density within normal limits (Tr. 196). Dr. King diagnosed Plaintiff with sciatica and a lumbrosacral strain and recommended she take the weekend off from work (Tr. 196). Plaintiff was also prescribed pain medicine.

At a subsequent visit in January 2003, Plaintiff reported that she still suffered symptoms and was receiving only "minimal relief" from the medication. Plaintiff complained her pain was exacerbated by activity (Tr. 197). An MRI exam revealed her L 4-5 disc was impinging the left L 5 nerve root. Dr. King fitted Plaintiff with a lumbar support orthosis, prescribed pain medication and muscle relaxers, and placed her on bed rest (*id.*). Two weeks later, Plaintiff reported "minimal improvement" while on bed rest and "moderate relief" from the medication. Dr. King observed Plaintiff "s[at] comfortably in the exam chair," and stated his opinion that her herniated disc was "improving." (Tr. 197-98). He recommended two additional days of bed rest (*id.*).

Plaintiff still complained of little improvement in February 2003, and a physical examination revealed a limited range of motion in her lumbar spine, "particularly in extremes of motion." (Tr. 198). Dr. King recommended Plaintiff remain "non active." (Tr. 199).

On March 4, 2003, Plaintiff was still complaining of radiating pain and was referred to a specialist, Dr. Thomas P. Miller, M.D. (Tr. 152, 199-200). On March 12, 2003, Dr. Miller performed "selective nerve root injections." During a visit on March 25, 2003, Dr. King observed Plaintiff's herniated disc was "improving" with aqua therapy and multiple medications.

4

By June 2003, Plaintiff reported "improved symptoms" to Dr. King and indicated she was "anxious to return to work." Dr. King noted his impression that the herniated disc was "resolving" and recommended Plaintiff could perform light duty work, provided she not engage in lifting, pushing, or bending (Tr. 200).

In September 2003, Plaintiff reported "intermittent" symptoms of back pain to Dr. King and reported she did not believe herself capable of a "full duty job" (Tr. 201). Dr. King noted Plaintiff sat comfortably in the exam chair and had a normal neurological exam. He recorded his opinion that Plaintiff should "continue with light duty work [with] no bending, no stooping, and no lifting greater than 10 lbs." (*Id.*).

In November 2003, Plaintiff reported she had continued to improve, and Dr. King recommended she could "have activity as tolerated" and could "continue light duty work." (Tr. 202). Around the same time, Plaintiff reported to Dr. Miller that she sometimes experienced "dull, aching and tingling" pain sensations (Tr. 184), sometimes on a "constant basis" (Tr. 184, 186), though after December 2003, these were only on an "intermittent" basis (*e.g.*, Tr. 159, 167, 171, 174, 182).

In February 2004, in the last of treatment notes by Dr. King, Plaintiff stated she was feeling "some better" after having been dismissed from work "because of her inability to return to full function." (*Id.*). Dr. King reported Plaintiff was "anticipating finding another position that is not as strenuous and causes her symptoms to flare." (*Id.*). He gave Plaintiff a letter "that disable[d] her from her job so that she c[ould] collect her retirement benefits," but he did not otherwise opine as to her work status (*id.*). Dr. King diagnosed Plaintiff with chronic pain and recommended she continue with pain management (*id.*).

5

By August 2004, Plaintiff described to Dr. Miller her pain as "slight pain" in her lower back and lower left extremity (Tr. 173). Dr. Miller's treatment notes indicate Plaintiff's subjective rating of her pain level improved during the course of her treatment. From April 2003, through December 2003, Plaintiff reported a pain level of 3/10 (Tr. 182, 184, 186, 188, 190, 192). Between February 2004 and April 2005, however, she rated her pain on 2/10 on most occasions, and 1/10 in June 2004.

By April 2005, Plaintiff reported her participation in pain management had allowed her to return to performing "general housework" (Tr. 160). She also reported she was able to shower and dress herself regularly, did laundry, cooked, vacuumed, shopped, and handled childcare and personal finances for her household (*e.g.*, Tr. 160, 180). She could also drive herself, sit in a car for two or three hours, and use a computer (*id.*). On the basis of these reports, Dr. Miller concluded the pain management was "helping" and the therapy was "working well" (Tr. 166, 184, 186, 190).

In her application for SSD benefits, Plaintiff states her pain affects her "at least once a day," depending on her activities, and she experiences some pain on "most days." (Tr. 123). When it affects her, the pain may last from a couple of hours to all day (*id.*). She does get some relief from her pain medications, but these leave her feeling "sluggish." Plaintiff reports she has difficulty standing or sitting in one place for too long (Tr. 124).

### C. The ALJ's Decision

The ALJ followed the Social Security Administration's five-step evaluation process to determine if Plaintiff was disabled. At step one, the ALJ found Plaintiff was not engaged in substantial gainful activity since the onset of her disability (Tr. 12). At step two, the ALJ found Plaintiff had severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, hypertension and obesity (*id.*). At step three, the ALJ found Plaintiff did not have any impairment

or combination of impairments severe enough to meet or medically equal a listed impairment (*id.*). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the additional limitation that she "may require a sit/stand option" (Tr. 13-19). At step four, the ALJ determined that this RFC determination precluded Plaintiff from performing any of her past relevant work (Tr. 19). Finally, at step five, the ALJ relied on testimony from a vocational expert ("VE"), who testified that given Plaintiff's RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Based upon this, the ALJ determined Plaintiff is not disabled (Tr. 19-22).

## D. Report & Recommendation

Plaintiff filed a motion for judgment on the pleadings, and Defendant filed a motion for summary judgment. These motions were addressed by the magistrate judge. On these motions, Plaintiff argued the ALJ, at step three, improperly substituted his own judgment for that of her treating physicians, Drs. King and Miller, and the ALJ's RFC assessment was therefore not supported by substantial evidence. The magistrate judge concluded that neither Dr. King nor Dr. Miller ever offered an opinion that was inconsistent with the ALJ's RFC determination.

## III. DISCUSSION

Plaintiff raises two arguments in her objection. First, she argues the magistrate judge erroneously concluded the ALJ did not substitute his own judgment for that of Plaintiff's treating physicians when he was assessing Plaintiff's RFC. Second, she argues the ALJ's RFC conclusion was not supported by substantial evidence, because Plaintiff was unable to stand or sit for extended periods of time.

7

### A. Treating Physician

Plaintiff alleges the ALJ's conclusion concerning Plaintiff's RFC was made by substituting the ALJ's own judgment for that of her treating physicians. The R&R concluded Plaintiff's treating physicians never offered an opinion as to Plaintiff's RFC that was not entirely consisted with the conclusion of the ALJ. The Court agrees with the magistrate judge.

The ALJ concluded that Plaintiff's RFC allows her to perform sedentary work, with the additional limitation that Plaintiff would need a "sit/stand option." Plaintiff argues the medical evidence from Plaintiff's treating physicians indicate Plaintiff cannot "perform sedentary work, as she would have to stand or sit for extended periods of time, maintain concentration, and follow instructions" (Court File No. 23, at 3). However, the Court can find no reference in the medical evidence offered from Plaintiff's treating physicians that she is unable to sit or stand for an extended period of time. The only assertion in the record that Plaintiff cannot sit for an extended period of time is from her own assertion in her claim for SSD benefits. No doctors have reached this opinion based on medical evidence or even recorded Plaintiff's assertion this was the case. Indeed, most of Plaintiff's visits with Drs. King and Miller contain the comment that she could sit comfortably in the exam chair (*see* Tr. 197-98).

Moreover, it appears Dr. King may have offered a contrary opinion. Though he initially placed Plaintiff on bed rest, by June 2003, Dr. King offered the opinion Plaintiff could perform "light duty" work that excluded lifting, pushing, pulling, and bending (Tr. 200). Dr. King did not identify sitting or standing as an excluded activity. By September 2003, Dr. King offered an even more optimistic opinion of Plaintiff's recovery. He opined she could perform light duty work, and though she still could not do work that involved bending or stooping, Dr. King did believe Plaintiff

8

could perform work that involved lifting up to 10 pounds (Tr. 201). If Plaintiff could lift 10 pounds, one might conclude she could also sit or stand. Regardless, however, Dr. King did not suggest that either sitting or standing should be an excluded activity.

Likewise, there is no support for Plaintiff's assertion she is unable to concentrate or follow instructions. In fact, it appears Plaintiff makes this assertion for the first time now. It was not suggested in her arguments made during the dispositive motions that she suffers from any cognitive impairments as a result of her back injury. Nor did Drs. King and Miller ever appear to offer an opinion on the matter. Therefore, the ALJ could not have substituted his own judgment for Drs. King and Miller's.

**B. Substantial Evidence**

Plaintiff alleges the ALJ's conclusion regarding her RFC was not supported by substantial evidence, because sedentary work would require Plaintiff to stand or sit for long periods of time, which she is unable to do. The Court determines the conclusion was based on substantial evidence.

As just discussed, there is no medical evidence to suggest Plaintiff cannot sit or stand for long periods of time. Her treating physicians never opined on the question. However, both of the physicians who met with Plaintiff for consultative examinations determined Plaintiff could sit for six hours out of an eight hour work day (Tr. 206, 229). One physician suggested she could also stand for four hours (Tr. 206), while the other opined she could only stand for two (Tr. 229). This evidence, however, was sufficient for the ALJ to discount the credibility of Plaintiff's assertion that she could not sit or stand for an extended period of time. Thus, the ALJ's conclusion Plaintiff could perform sedentary work was supported by substantial evidence.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's findings of fact, conclusions of law, and recommendations (Court File No. 22); **DENY** Plaintiff's motion (Court File No. 13), **GRANT** Defendant's motion (Court File No. 19); **AFFIRM** the decision of the Commissioner of Social Security; and **DISMISSES** the case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**